DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Susan J. Materna Adams ("Susan"), has appealed from a judgment of the Summit County Court of Common Pleas, which modified the child support and uninsured medical expense obligations of Appellee, Kenneth A. Adams ("Kenneth"), and declined to hold Kenneth in contempt of court. We affirm.
 I. {¶ 2} Susan and Kenneth were divorced on December 19, 1991. Susan was awarded custody of the couple's only child, Jacquelyn, who was born in April of 1987. Jacquelyn is both physically and mentally disabled. As part of the divorce judgement, Kenneth was ordered to pay Susan child support in the amount of $343.00 per month; to maintain health insurance coverage for Jacquelyn; and to pay for all of the uninsured health care expenses incurred for and on behalf of Jacquelyn.
 {¶ 3} On June 11, 2002, following an administrative hearing, the Child Support Enforcement Agency ("CSEA") filed a recommendation to modify the child support order, proposing that the monthly payment be reduced to $179.75. Susan requested the Summit County Court of Common Pleas to review the recommendation. Shortly after making this request, Susan filed a motion to hold Kenneth in contempt for failure to comply with the order to pay for all of Jacquelyn's uninsured health care expenses.
 {¶ 4} The matter was heard before a magistrate on October 31, 2002. On September 13, 2003, the trial court issued its final judgment on the matter. The court reduced Kenneth's child support obligation, ordering him to pay $265.72 per month, effective November 1, 2001, and $307.82 per month, effective November 1, 2002. The court explained that these figures included an upward deviation of $90 per month, based on Jacquelyn's special and unusual needs. In addition, the court mitigated Kenneth's obligation to pay for Jacquelyn's uninsured health care expenses. First, the court ordered Susan to pay for the first $100 of those expenses per calendar year. The court then ordered Kenneth to pay for 37% of the remainder of those costs, effective November 1, 2001; raised his share to 71%, effective November 1, 2002; and ordered Susan to pay for the balance of those costs. Finally, the court overruled Susan's motion to hold Kenneth in contempt.
 {¶ 5} Susan timely appealed, raising three assignments of error.
 II. Assignment of Error No. 1
"The trial court erred in its finding that the appellee is not voluntarily underemployed and in its corresponding order which modifies and reduces appellee's child support obligation."
 {¶ 6} In her first assignment of error, Susan maintains that the trial court's modification of Kenneth's child support obligation is premised upon an erroneous finding: that Kenneth was not voluntarily underemployed. We disagree.
 {¶ 7} In calculating the amount of child support to be provided pursuant to R.C. 3113.215(B), the trial court is required to consider the gross income of each of the parties. "Gross income" includes all earned and unearned income of the parties, including wages, interest, and dividends. R.C. 3113.215(A)(2). If the trial court determines that a parent is voluntarily unemployed or underemployed, it may impute to that parent income which it determines the parent would have earned if fully employed. R.C. 3113.215(A)(5).
 {¶ 8} "The question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." Rock v. Cabral (1993),67 Ohio St.3d 108, 112. An abuse of discretion suggests more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619, 621.
 {¶ 9} Since February 2001, Kenneth has been employed by Wal-Mart, where he earns $7.05 per hour and works 30 to 35 hours per week. Before that, he was employed by Goodyear, where he had worked as a tire technician for 31 years. In 2000, his last full year at Goodyear, Kenneth earned $33,269.30. In 2001, he earned $7,125.60 from Goodyear and $10,821.67 from Wal-Mart.
 {¶ 10} Pointing out the disparity between the income Kenneth earns at Wal-Mart and the income he earned at Goodyear, Susan requested the trial court to find that he was voluntarily underemployed, and to impute a higher income to him for purposes of child support calculation.
 {¶ 11} At the October 31, 2002 hearing on this matter, Kenneth testified that he retired from Goodyear in 2001 because he was informed that he might be laid off. Kenneth explained that rather than risk a lay-off and the attendant loss of health care coverage for Jacquelyn, he chose to accept a retirement offer from Goodyear. In addition, he submitted a written statement from his psychiatrist, stating that his current employment with Wal-Mart "is as much as he can handle at this time and still maintain psychiatric stability." Based on this evidence, the trial court found that Kenneth is not voluntarily underemployed, and therefore denied Susan's request to impute a higher income to him.
 {¶ 12} We do not find an abuse of discretion in the trial court's conclusion that Kenneth is not voluntarily underemployed. Kenneth explained why he left his job at Goodyear, offering his own testimony that he retired because he feared losing both his job and Jacquelyn's health coverage benefits due to a lay-off. Susan did not offer any evidence which controverts this testimony. Further, Kenneth offered a medical rationale for his current lower-paying job. This evidence supports the trial court's finding that Kenneth was not voluntarily underemployed.
 {¶ 13} Susan's first assignment of error is overruled.
 Assignment of Error No. 2
"The trial court erred and abused its discretion in its failure and refusal to recognize the special and unusual needs of the parties' minor child, the corresponding medical care required by the minor child, and the cost of prescription and non-prescription medicines and supplies necessary for the care and treatment of the minor child."
 {¶ 14} In her second assignment of error, Susan argues that the trial court's modification of Kenneth's child support obligation amounts to an abuse of discretion. Specifically, Susan maintains that the $90 upward deviation in Kenneth's child support order is inadequate, and that the trial court only exacerbated existing inequities by mitigating Kenneth's obligation to fund Jacquelyn's uninsured health care expenses. We disagree.
 {¶ 15} A trial court possesses broad discretion in its determination regarding a modification of child support obligations. Pauly v. Pauly
(1997), 80 Ohio St.3d 386, 390, citing Booth v. Booth (1989),44 Ohio St.3d 142, 144. Accordingly, an appellate court will not disturb such determinations absent an abuse of discretion. Pauly,80 Ohio St.3d at 390, citing Booth, 44 Ohio St.3d at 144.
 {¶ 16} First, Susan challenges the amount of the upward deviation added to Kenneth's child support obligation, arguing that it is too small. R.C. 3119.021 provides the basic child support schedule to be used by courts and child support enforcement agencies. A court may deviate from the guideline child support amount provided by the schedule if it determines that the amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child[.]" R.C. 3119.24(A)(1). R.C. 3119.23 provides a list of the criteria a trial court may consider when determining whether to deviate from the child support schedule. Included among those criteria are the "[s]pecial and unusual needs of the children[.]" R.C. 3119.23(A).
 {¶ 17} After finding that the child support amount provided by the guidelines is "unjust, inappropriate, and not in the best interest of the child," the trial court found that an upward deviation in the amount of $90 per month is "appropriate and in the best interest of the child given her special and unusual needs." The court then elaborated upon the "special and unusual needs" it took into account, explaining that Jacquelyn requires many "over-the-counter medicines and supplies." The court found that these items cost approximately $223.00 per month, and determined that "it is reasonable and appropriate for [Kenneth] to share 40% of the cost," that is, $90 per month.
 {¶ 18} We find that the trial court did not abuse its discretion by declining to order a larger upward deviation. The trial court found that Jacquelyn's special and unusual needs consist of non-prescription medicines and other health care supplies. According to a document submitted by Susan, these items cost $222.95 per month, or, as the trial court found, approximately $223.00 per month. The trial court determined that Kenneth should be responsible for 40% of the expenses associated with these special and unusual requirements. We do not conclude that this determination reflects an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.
 {¶ 19} Next, Susan maintains that the trial court abused its discretion by reducing Kenneth's obligation to pay for Jacquelyn's uninsured health care expenses. Under the December 19, 1991 judgment of divorce, Kenneth was required to pay for all of Jacquelyn's uninsured health care expenses. At the October 31, 2002 hearing before the magistrate, two public health nurses each testified that Susan declined to apply for benefits and services available through the Bureau for Children with Medical Handicaps (BCMH). The two nurses further testified that Susan stated that she was not interested applying for BCMH benefits because she was not obligated to pay for Jacquelyn's medical expenses, as they were Kenneth's responsibility. Susan also testified that she had not applied for BCMH benefits, but explained that her refusal to do so was motivated by her understanding that if she accepted the benefits, she would have to change four of Jacquelyn's fifteen treating physicians. The magistrate found that "Jacquelyn is undoubtedly medically eligible for services from BCMH, and she is likely to be financially eligible as well[.]"
 {¶ 20} The trial court found that "[u]nder the circumstances of this case, it is not reasonable for [Susan] to refuse to take advantage of medical and financial assistance that is available for the minor child. If [Susan] refuses the assistance that is available to her, it is fair that she should help shoulder the expenses that are incurred as a result." The trial court then reallocated the responsibility for Jacquelyn's uninsured health care expenses, reducing Kenneth's share of those costs to 37%, after the first $100, effective November 1, 2001, and to 71%, after the first $100, effective November 1, 2002.
 {¶ 21} We find no abuse of discretion in the trial court's reallocation of the responsibility for Jacquelyn's uninsured medical expenses. It is undisputed that Susan refused to apply for BCMH benefits. The trial court determined that, because of her refusal to seek BCMH benefits, Susan should share in the responsibility for the expenses which those benefits might reduce. We do not conclude that this determination reflects an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.
 {¶ 22} The trial court did not abuse its discretion by declining to order an upward deviation larger than $90, or by reallocating the responsibility to pay for Jacquelyn's uninsured medical expenses. Susan's second assignment of error is overruled.
 Assignment of Error No. 3
"The trial court erred and abused its discretion in its finding and order that appellee was not guilty of contempt of court for his failure and refusal to pay all of the minor child's uninsured prescription and non-prescription medicines and supplies."
 {¶ 23} In her final assignment of error, Susan contends that the trial court erred by declining to hold Kenneth in contempt of court. We disagree.
 {¶ 24} "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v. Tomaszczyk (1971),27 Ohio St.2d 55, paragraph 1 of the syllabus. "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." Denovchek v. Bd. of Trumbull Cty.Commrs. (1988), 36 Ohio St.3d 14, 16. An appellate court therefore will not overturn a lower court's ruling on a contempt motion absent an abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11. "[A] person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order."Courtney v. Courtney (1984), 16 Ohio App.3d 329, 334.
 {¶ 25} On August 6, 2002, Susan filed a motion to hold Kenneth in contempt, alleging that he had failed to comply with the court's order to pay for all of Jacquelyn's uninsured medical expenses. The court denied this motion in its final judgment entry.
 {¶ 26} At the hearing on this matter, Susan explained that she purchases Jacquelyn's uninsured medical requirements and forwards bills for those items to Kenneth. Susan testified that Kenneth had reimbursed her for at least part of Jacquelyn's uninsured medical expenses. Kenneth testified that he was "a little bit behind" in his reimbursements to Susan because he "do[esn't] have any money." Kenneth further testified that he did not believe that all of the charges submitted by Susan were valid.
 {¶ 27} In sum, the testimony offered at the hearing indicates that Kenneth complied in part with the trial court's prior order to pay for all of Jacquelyn's uninsured medical expenses; that Kenneth felt he was unable to comply fully with that order; and that Kenneth questioned whether some of the charges submitted by Susan qualified as uninsured medical expenses. Furthermore, as discussed in our analysis of Susan's second assignment of error, the trial court determined that Susan refused to pursue public services and benefits which would reduce Jacquelyn's uninsured health care expenses. Given these circumstances, we conclude that the trial court did not abuse its discretion by denying Susan's motion to hold Kenneth in contempt. Susan's second assignment of error is overruled.
 III. {¶ 28} Appellant's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J., Batchelder, J., concur.