DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Danny McBryer ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.
 {¶ 2} Father and Plaintiff-Appellee, Amy McBryer ("Mother"), were married in August 2000. The parties divorced on October 14, 2005. Together they have two minor children for whom they share parenting responsibilities. Under the Final Decree of Divorce, Father was ordered to pay Mother $787.30 per month in child support. At the time of the parties' divorce, Father worked at the Parma plant of General Motors ("GM") earning $52,000 per year, plus an additional $4,700 in overtime pay. Mother was also employed at Windsong Care Center earning $36,000 annually. In April 2006, GM offered its hourly employees a voluntary buy out. Given Father's seniority there, he was eligible for a $70,000 one time lump sum payment. Father accepted the offer, the terms of which precluded him from any future employment with GM or *Page 2 
any of its affiliates. In April 2007, Father was hired full time as a department manager at Lowe's where he earns and annual salary of approximately $26,650.
 {¶ 3} In April 2007, Father filed a motion to modify child support. After a magistrate's hearing on that motion, the trial court approved a downward modification in support to $296.79. Mother filed an objection to that order, which resulted in the trial court reversing and remanding the case based on a lack of evidence in support of the finding that defendant was not underemployed. In December 2007, a second hearing was held on the issues of Father's underemployment. The magistrate's decision again concluded that Father was not underemployed. This order was also adopted by the trial court and Mother again filed an objection to the trial court's order. On March 27, 2008, the trial court reversed the magistrate's decision, finding that Father was voluntarily underemployed and imputing Father's wages for the purposes of child support at his former GM pay rate of $52,000 plus approximately $4,700 in overtime.
 {¶ 4} Father now appeals the trial court's decision, asserting one assignment of error for our review.
 II Assignment of Error "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT BY FINDING, CONTRARY TO R.C. § 3119.01(C)(11) (sic) AND OHIO CASE LAW, THAT APPELLANT WAS VOLUNTARILY UNDEREMPLOYED."
 {¶ 5} In his sole assignment of error, Father argues that the trial court erred in determining that he was voluntarily underemployed and imputing his annual income at nearly $57,000 when he is currently employed in a position where he earns $26,650 per year. We disagree. *Page 3 
 {¶ 6} "The question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." Rock v. Cabral (1993),67 Ohio St.3d 108, 112. An abuse of discretion suggests more than an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 7} To determine the amount of child support that each parent is responsible for paying, the court must determine the annual income of each parent. "Income" is defined under R.C. 3119.01(C)(5) as either of the following: "[f]or a parent who is employed to full capacity, the gross income of the parent; *** [f]or a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." Additionally, R.C. 3119.01(C)(11) defines that:
 "(11) "Potential income" means *** for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:
 "(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
 "(i) The parent's prior employment experience;
 "(ii) The parent's education;
 "(iii) The parent's physical and mental disabilities, if any;
 "(iv) The availability of employment in the geographic area in which the parent resides;
 "(v) The prevailing wage and salary levels in the geographic area in which the parent resides; *Page 4 
 "(vi) The parent's special skills and training;
 "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
 "(viii) The age and special needs of the child for whom child support is being calculated under this section;
 "(ix) The parent's increased earning capacity because of experience;
 "(x) Any other relevant factor.
 "(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant."
 {¶ 8} "As the party moving for the child support modification, [Father] had the burden of proof of establishing how the relevant factors would support a modification of his child support obligation."Keller v. Keller, 9th Dist. No. 04CA0084, 2005-Ohio-3302, at ¶ 17.
 {¶ 9} It is undisputed that Father's decision to terminate his employment at GM and accept the company's buy out offer was entirely voluntary. Father argues that he accepted the buy out offer because he was told that if the company did not attain the necessary attrition level it sought to accomplish with the buy out, that "there [were] going to be permanent lay offs in September." If a permanent layoff were to occur, Father would be without any income because he was ineligible for unemployment compensation (based on a past violation involving unemployment benefits). Furthermore, because he was ineligible for unemployment compensation, he likewise was ineligible for the union's "sub pay" which compensated union members above and beyond the unemployment pay they received when laid off. Father also points to the fact that he was on a progressive discipline plan whereby he would be subject to termination if he incurred one more disciplinary violation within the next 18 months, which *Page 5 
again, would put him in a situation of having no income based on his inability to receive unemployment compensation.
 {¶ 10} The evidence in the record regarding potential layoffs, however, differs from Father's account. At the support modification hearing, the human resources supervisor testified that when the buy out was offered, "we had no plans [for layoffs] at that time." Additionally, the union chairman testified that if Father did not take the buy out, that he would have still had a job with GM. Similarly, the union representative indicated that the buy out was not offered as an alternative to being laid off; he indicated that there was a possibility that Father could have been laid off permanently, temporarily, or not at all. All three GM representatives testified to the unexpectedly large number of employees who accepted either the buy out or early retirement offers made at that time. Because GM lost nearly one third of its 2,700 employees at the Parma plant as a result of its offers, GM had to in turn, hire approximately 273 hourly workers to fill the vacated positions. Thus, we find no evidence to support Father's claim that he was facing an impending layoff.
 {¶ 11} Father maintains that there is a lack of evidence to support a finding that there was work available to him at his former rate of pay or that he had the requisite skills necessary to obtain employment at a rate higher of pay than what he is currently earning at Lowe's. He also complains that the trial court failed to review all of the criteria set forth in R.C. 3119.01(C)(11)(a). We note, however, that the trial court was not obligated to research or develop evidence not presented by the parties. Keller at ¶ 17. Instead, the trial court may presume that any factor set forth in R.C. 3119.01(C)(11) which was not substantiated by evidence was immaterial to its determination of imputing income. Id. What appears to be lost on Father is that he carried the burden of proof in this case as he was the party seeking to modify *Page 6 
the child support calculation. See id. Accordingly, it was his burden to put forth evidence in support of R.C. 3119.01(C)(11)(a)'s criteria to prove that he was not voluntarily underemployed. Specifically, we find that there is a lack of any evidence as to what attempts Father made, even if unsuccessful, to secure comparable employment for the twelve month period between the time he accepted the buy out in April 2006 and when he started his position with Lowe's in April 2007. Instead, the record is clear that Father voluntarily relinquished a well paying job with an employer who has since, continued to hire employees in similar, if not the same, positions. Moreover, we view the fact that GM sought to hire hundreds of hourly workers at the very time that Father voluntarily surrendered a position there as evidence that employment opportunities at his wage level were in fact available in his geographic area in satisfaction of R.C. 3119.01(C)(11)(a)(iv) and (v).
 {¶ 12} Additionally, Father argues on appeal that the trial court failed to consider the other factors outlined in R.C. 3119.01(C)(11), yet we do not see anywhere in the record where he put forth evidence on those factors to support a finding that he was not underemployed. Father offered no evidence as to why his education level, his skills or training, his employment history, or his salary prior to his job with GM might have inhibited him from finding a job with a comparable income to the one that he had with GM R.C. 3119.01(C)(11)(a)(i), (ii), (vi) and (vii). Interestingly, the only mention regarding Father's skills or training was where he indicated that he was previously a member of the carpenter's union, which suggests that he does, in fact, have special skills or training that would bolster his ability to find work at the income level imputed to him. We find Father's assertion that the trial court failed to consider all the mandated factors under R.C. 3119.01
without merit. *Page 7 
 {¶ 13} Father relies on our decision in Adams v. Adams, 9th Dist. No. 21775, 2004-Ohio-3563, in support for the claim that he is not voluntarily underemployed. In Adams, we affirmed the trial court's finding that the appellee was not voluntarily underemployed when he accepted a retirement offer from Goodyear and sought supplemental employment by obtaining a lower paying job at WalMart. In that case, unlike Father's, there was uncontroverted testimony that Adams was informed he might be laid off and as a result, would lose health care coverage for him and his daughter. Additionally, Adams was retirement eligible after his 31 years of service at Goodyear and had psychiatric issues which factored into his decision to retire and his subsequent inability to obtain a higher paying position. We find no such similar evidence in the record of this case. Rather, fellow employees' testimony revealed that Father's layoff fears were unfounded. Here, Father elected an early buy out in the form of a lump sum payment after five years of employment at GM, in large part because of disciplinary problems he was facing. We fail to see how Father's situation is analogous to Adams's.
 {¶ 14} We find that the trial court did not abuse its discretion by ordering child support based upon Father's imputed income as determined by the criteria under R.C. 3119.01(C)(11). Accordingly, Father's sole assignment of error is not well taken.
 III {¶ 15} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed. All outstanding motions in this case are denied as moot.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 8 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
MOORE, J., CONCURS.